**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RUBEN DARIO LOJA LOJA,<br><br>Petitioner,<br><br>vs.<br><br>MOSHANNON VALLEY ICE PROCESSING CENTER,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:26-cv-01378<br>Judge Stephanie L. Haines |

**MEMORANDUM OPINION AND ORDER**

Ruben Dario Loja Loja ("Petitioner"), proceeding pro se, filed a Petition for Writ of Habeas Corpus, challenging the constitutionality of his immigration detention and seeking immediate release or, alternatively, an individualized bond hearing. ECF No. 1. For the reasons that follow, the Petition will be **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Ecuador. ECF No. 9-1, p. 3. He entered the United States without inspection at or near Naco, Arizona on August 16, 2016. *Id.* Three days later, immigration authorities placed him in expedited removal proceedings. ECF No. 9-2, p. 2. Following a positive credible fear determination, his expedited removal order was vacated and he was placed in full removal proceedings under 8 U.S.C. § 1229a. ECF No. 9-3, p. 2.

On September 6, 2016, the Department of Homeland Security ("DHS") authorized Petitioner's release on a $4,500 immigration bond. ECF No. 9-6, p. 2. Since then, he has worked in the roofing/construction trades. ECF No. 1, ¶ 12. In 2024 and 2026, Petitioner was arrested on various state criminal charges, all of which were later nolle prossed/withdrawn. ECF No. 1, ¶ 9;

ECF No. 9-4, pp. 2-3; ECF No. 9-8, pp. 6-10. On June 29, 2026, Immigration and Customs Enforcement ("ICE") took Petitioner into custody while he attended a state court hearing. ECF No. 1, ¶ 7; ECF No. 9-7, p. 2. He remains detained at the Moshannon Valley Processing Center. ECF No. 1, ¶ 7; ECF No. 9-7, p. 2. On July 13, 2026, Petitioner filed a pro se Petition for Writ of Habeas Corpus and the Government opposed the petition, which has been fully briefed and is ready for disposition. ECF Nos. 1, 9-12.

## II. DISCUSSION

Under 28 U.S.C. § 2243, the Court must "summarily hear and determine the facts, and dispose of [a habeas petition] as law and justice require." Although Petitioner did not expressly identify his September 2016 bond release as a basis for relief, the Court must liberally construe his pro se Petition. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Moreover, the Government itself disclosed the prior bond determination, submitted the supporting custody records, and expressly argued that the prior release is irrelevant to his present detention. ECF No. 9, p. 3 nn.2-3. Accordingly, the Court will consider Petitioner's prior release in determining the legality of his present detention and his entitlement to the relief requested.

### A. Petitioner's Prior Release on Bond and Subsequent Redetention

The Government maintains that regardless of Petitioner's release on bond under 8 U.S.C. § 1226(a) in 2016, he is subject to mandatory detention under Section 1225(b)(1)(B)(ii) and not entitled to a bond hearing. ECF No. 9, pp. 3, 7-15 & nn.2, 6. Its argument relies principally on *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019), and *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Here, following Petitioner's positive credible fear determination in 2016, DHS canceled his expedited removal order, placed him in full removal proceedings, and affirmatively authorized his release on bond under the Section 1226 custody framework, ECF No. 9-6, p. 2. At the time, the

Board of Immigration Appeals ("BIA") allowed release on bond under Section 1226(a) to noncitizens who were initially screened for expedited removal but established a credible fear of persecution. *See Matter of X-K-*, 23 I&N Dec. 731, 734-36 (BIA 2005). In 2019, that case was overruled by the Attorney General, who determined that individuals transferred from expedited to standard removal proceedings were not eligible for bond. *See Matter of M-S-*, 27 I&N Dec. at 518-19. The Government has identified no action taken to revoke Petitioner's 2016 release following *Matter of M-S-* and he remained at liberty for nearly ten years before ICE redetained him in the interior of the United States in June 2026.

Courts addressing similar redetentions have rejected the Government's position that an initial detention under Section 1225(b)(1) necessarily governs subsequent custody where an intervening release occurred under Section 1226(a). For example, in *Fernandez-Morocho v. Blanche*, the court considered a noncitizen initially placed in expedited removal proceedings, transferred to full removal proceedings after establishing credible fear, released on bond before *Matter of M-S-* was decided, and redetained years later. No. 26-cv-09526 (KSH), 2026 WL 2874904 (D.N.J. Sept. 24, 2026). The Court finds persuasive the *Fernandez-Morocho* court's reasoning that the prior bond release under the then-governing *Matter of X-K-* framework "supports the conclusion that [the noncitizen's] detention is governed by 8 U.S.C. § 1226(a)" and that the Government could not revert the noncitizen's status "to that which it was at the time of his entry." *See id.* at *1-2 (collecting cases). Accordingly, the Court likewise concludes that Petitioner's present detention is governed by Section 1226(a).

Although Section 1226(a) governs Petitioner's present detention, the Government retains significant discretion in revoking his bond. 8 U.S.C. § 1226(b). Section 1226(b)'s implementing regulation, however, requires an exercise of discretion by an authorized immigration official in

order to revoke the prior release. 8 C.F.R. § 236.1(c)(9). Courts interpreting this regulation have distinguished such a discretionary decision to revoke a previously authorized release from the subsequent arrest and detention of the noncitizen. *See Ebu v. Tindall*, No. 3:25-cv-779-RGJ, 2026 WL 252899, at *3 (W.D. Ky. Jan. 30, 2026); *see also Nana Cheng v. Warden of Adelanto ICE Proc. Ctr.*, No. 5:26-cv-4571-SK, 2026 U.S. Dist. LEXIS 202937, at *5-6 (C.D. Cal. Sept. 7, 2026). Further, the fact of redetention does not itself establish that an authorized official exercised the discretion necessary to revoke the prior release. Failure to comply with this regulation governing the exercise of revocation authority may warrant relief under the *Accardi* doctrine, which requires federal agencies to follow their own regulations. *Leslie v. AG of the United States*, 611 F.3d 171, 180 (3d Cir. 2010). And the Third Circuit has recognized that violations of regulations protecting fundamental statutory or constitutional rights, like the revocation regulation at issue here, which protects against an unauthorized deprivation of physical liberty, may warrant judicial relief without a separate showing of prejudice. *See id.* at 178.

Here, because the Government has not established that an authorized official exercised the discretion required by Section 236.1(c)(9), it has not demonstrated that Petitioner's previously authorized release was lawfully revoked. By contrast, in *Matter of M-S-*, the Attorney General expressly reversed the immigration judge's prior bond order and directed the noncitizen's detention. 27 I&N Dec. at 519. Although it identifies criminal arrests occurring after Petitioner's release on bond, those circumstances do not themselves establish that an authorized official exercised the discretion required to revoke his release. Instead, the Government maintains that Petitioner's previous bond release has no bearing on his present detention. ECF No. 9, p. 3 n.2. *Jennings* also does not justify the Government's position that it may release a noncitizen on bond pursuant to Section 1226(a) and then, years later, redetain that same individual under Section

1225(b)(1)(B)(ii). In *Jennings*, while the Supreme Court held that Section 1225(b)(1) mandates detention throughout the proceedings governed by that provision, it did not address the legal consequences of a previously authorized Section 1226(a) bond release or the procedures governing the subsequent revocation of that release. 583 U.S. at 302-03. Accordingly, the Government has not established that Petitioner's prior release was lawfully revoked under Section 1226(b) and its implementing regulation.

The Government alternatively argues that Petitioner is subject to mandatory detention under Section 1225(b)(2)(A). ECF No. 9, p. 2 n.1. But the Third Circuit has held that this provision applies to noncitizens seeking admission to the United States, not those apprehended in the interior after having entered the country. *Buele Morocho v. Warden Phila. FDC*, 189 F.4th 287, 292-305 (3d Cir. 2026). Because Petitioner was apprehended in the interior in June 2026, nearly ten years after his initial entry, Section 1225(b)(2)(A) does not independently authorize his present detention.

Separately, the Supreme Court has recognized that conditional release from physical restraint may give rise to a liberty interest protected by the Due Process Clause. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Although those decisions arose outside the immigration context, the Court finds instructive the application of those decisions in a similar case involving a noncitizen initially processed for expedited removal, who then established a credible fear of persecution, was released on bond, and was redetained years later. *Singh v. Andrews*, No. 1:26-cv-00791-KES-CDB (HC), 2026 WL 959976, at *3-4 (E.D. Cal. Apr. 9, 2026). Although here Petitioner was released pursuant to DHS's own custody determination, unlike the *Singh* petitioner who was released by an immigration judge's

determination,[1] the Court finds that Petitioner's near decade of freedom similarly implicates a substantial protected liberty interest. The Government's reliance on *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), does not change this determination. The Third Circuit expressly distinguished *Thuraissigiam* and recognized that noncitizens residing in the United States for extended periods have established connections to the United States and possess due process rights beyond those afforded to individuals at the threshold of initial entry. *See Buele Morocho*, 189 F.4th at 305-06. Accordingly, the Court will independently determine what process is required to justify the continued deprivation of Petitioner's previously authorized liberty.

**B. The *Mathews* Analysis**

When evaluating the process due to noncitizens under the Due Process Clause who have been in the United States for a significant period of time and established connections to the United States, courts consider:

> (1) [T]he private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 306 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)) (internal quotation marks omitted).

The first factor weighs substantially in Petitioner's favor. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Moreover, Petitioner does not merely seek release following his initial encounter with immigration

---

[1] In 2017, DHS represented that its practice was to handle bond revocations similarly, regardless of whether the prior release decision was made by a DHS officer or an immigration judge. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018).

authorities. DHS previously authorized his release on bond, and he remained at liberty for nearly ten years before his present detention. The deprivation of that longstanding conditional liberty implicates a significant private interest.

The second factor likewise favors Petitioner. As discussed above, Section 1226(b) authorizes DHS to revoke a prior bond, yet the Government has not identified any individualized decision revoking Petitioner's release under that authority. More importantly, although Section 1226(a) ordinarily permits individualized custody review, the Government has maintained throughout these proceedings that Petitioner is instead subject to mandatory detention under Section 1225(b)(1)(B)(ii) and that *Matter of M-S-* renders Petitioner categorically ineligible for bond consideration, ECF No. 9. The Government's continued reliance on that classification has effectively foreclosed the individualized custody review otherwise available under Section 1226(a) following his June 2026 redetention. The absence of such individualized review creates a substantial risk of erroneously depriving an individual of his liberty. *Buele Morocho*, 189 F.4th at 307.

The third factor weighs in the Government's favor because it has a strong interest in "preventing the release of dangerous noncitizens and those who might fail to appear at future hearings." *Id.* The Court recognizes that Petitioner was arrested on several criminal charges following his 2016 release, although those charges were all subsequently withdrawn. While their disposition does not necessarily establish that the alleged conduct did not occur, neither do the arrests, standing alone, establish that continued detention is necessary. That determination requires consideration of the available evidence and Petitioner's individual circumstances. Yet the Government has identified no such assessment following his redetention. Nor has it demonstrated that providing individualized custody review would impose an undue administrative burden.

Accordingly, although this factor weighs in the Government's favor, it does not outweigh the significant private interest and risk of erroneous deprivation identified above. *See id.* On balance, the *Mathews* factors weigh in Petitioner's favor and his detention while denying him any individualized custody review violates his procedural due process rights.

**C. The Government's Prolonged Detention Argument**

The Court has also considered the Government's alternative argument that Petitioner's detention is not unreasonably prolonged under *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). ECF No. 9, pp. 11-15. At the time the Government filed its opposition, Petitioner had been detained for almost two months.[2] While that duration, standing alone, does not establish that his detention has become unreasonably prolonged under *German Santos*, the present claim involves more than the length of detention. Rather, it concerns the Government's failure to establish that his longstanding conditional liberty was lawfully revoked and the continued absence of meaningful individualized custody review. Neither alleged defect depends on detention first becoming unreasonably prolonged. Under these circumstances, the Government's reliance on the relatively brief duration of Petitioner's current detention does not defeat his claim.

**D. Remedy**

The remaining question is whether Petitioner should receive a bond hearing or immediate release. Here, DHS affirmatively authorized Petitioner's release on bond in 2016 and Petitioner remained at liberty for nearly ten years. Although the Government possesses statutory authority to revoke that release, it has not established that an authorized official exercised such authority before Petitioner's redetention. The Government maintains that the prior bond release has no bearing on his present custody and that he is categorically ineligible for an immigration judge's bond

---

[2] Petitioner represents that his next individual hearing in immigration court is scheduled for April 21, 2027, nearly six months from now and approximately ten months after his redetention. ECF No. 1-2, p. 2.

determination. Thus, this case involves both an unsubstantiated revocation of previously authorized conditional liberty and a resulting deprivation of that liberty without constitutionally adequate process.

Courts have ordered immediate release where ICE failed to establish compliance with the procedures governing revocation of a prior release. *Ebu*, 2026 WL 252899, at *5 (ordering immediate release and collecting cases); *Nana Cheng*, 2026 U.S. Dist. LEXIS 202937, at *7. Other courts addressing redetention following an earlier Section 1226(a) bond release have likewise ordered immediate release where the Government denied the opportunity to seek bond. *Singh*, 2026 WL 959976, at *2-6; *Luna Sanchez v. Bondi*, No. 1:25-cv-018888-MSN-IDD, 2025 WL 3191922, at *4-5 (E.D. Va. Nov. 14, 2025). And the Third Circuit has affirmed judgments ordering the immediate release of noncitizens who had been unlawfully detained without an opportunity for bond consideration. *Buele Morocho*, 189 F.4th at 305, 307. Although these decisions do not require immediate release in every case involving a denial of bond proceedings, they establish that immediate release is an available habeas remedy when continued confinement lacks a lawful basis.

Here, DHS affirmatively authorized Petitioner's release on bond under Section 1226(a) in September 2016. The Government has not established that the release was subsequently revoked in accordance with Section 1226(b) and its implementing regulation. Instead, it maintains that the release has no bearing on Petitioner's present detention and that he is categorically ineligible for bond consideration. Thus, the defect is not merely the absence of a subsequent bond hearing but rather it is the Government's failure to establish the lawful termination of an existing release. Ordering a new bond hearing would permit reconsideration of Petitioner's custody but would not establish that the Government lawfully terminated his existing release. Because the Government has failed to establish the legal predicate for his present detention, the appropriate remedy is to

restore the conditional liberty DHS previously authorized. Accordingly, the Court will order Petitioner's immediate release, subject to lawful noncustodial conditions.

## III. CONCLUSION

For the reasons set forth herein, the Petition will be **GRANTED**. An appropriate Order follows.

## ORDER

**AND NOW**, this 3rd day of November, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1. The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED** to the extent it seeks Petitioner's release from ICE detention.
2. Respondent shall immediately release Petitioner from ICE detention, subject to lawful noncustodial conditions of release.
3. The Motion for Expedited Resolution, ECF No. 12, is **DISMISSED** as moot.
4. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines
United States District Judge